IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LARRY WILBANKS, DAVID SMOKER
and THOMAS ZAJICEK,

        Plaintiffs,

v.                                                                                              CIV. No. 97-1590 LH/RLP

MARK RADOSEVICH, in his Individual Capacity,
STEPHEN GAROFANO, in his Individual Capacity,
and FRANK TAYLOR, in his Individual and Official
Capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss Second Amended Complaint (Docket No. 39). The Court, having reviewed the briefs and relevant case law and being otherwise fully informed, concludes that the motion is not well taken and shall be **denied**.

## I.  Standards for Motion to Dismiss

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, I accept the factual allegations of the complaint as true. *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505 (10th Cir. 1991). The claim is not dismissed unless there is no set of facts under

which plaintiff would be entitled to relief. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990). The issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The Federal Rules of Civil Procedure require only that the pleadings give a defendant notice of the nature of the claims against him." *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1127 (10th Cir. 1998).

## II. First Amendment Claims of Plaintiff Wilbanks

Defendants seek to dismiss Wilbanks's First Amendment claims on the basis that the Second Amended Complaint ("SAC") does not allege facts establishing, or from which it can be inferred, that there was a causal relationship between the allegedly protected speech and the employment actions taken against Wilbanks.[1] It appears to be Defendants' position that Taylor was never aware of the allegedly protected speech of Wilbanks and that he had no unconstitutional animus toward Wilbanks. Defendants also seek qualified immunity, asserting that it has never been established that a plaintiff can state a First Amendment violation absent a causal relationship between the allegedly protected conduct and the enforcement action against him.

According to the SAC, at all material times, Taylor was the New Mexico State Police ("NMSP") Chief. As such, he was responsible for the supervision of all NMSP officers, including

---

[1] Plaintiff Wilbanks was granted leave to amend his complaint to allege a causal relationship between the alleged protected speech previously contained in Paragraphs 16 and 28 of the Complaint and any alleged retaliation.

2

all other parties to this lawsuit. Radosevich was the Captain and District Commander of District 13 (Raton) and supervised Garofano and Wilbanks, Smoker and Zajicek. Garofano was a Lieutenant in District 13 and supervised the three Plaintiffs as well.

Only Wilbanks has remaining First Amendment claims. My January 27, 1999 order granted him leave to amend Paragraph 28 in the original complaint. Paragraph 28 alleged harassment of Wilbanks after he wrote a memo, informing Radosevich that Garofano had driven a New Mexico State Police vehicle in an illegal manner. This memo was dated January 24, 1995. In my prior order I also granted Wilbanks leave to amend Paragraph 16 in the original complaint, which alleged a September 1994 meeting between Wilbanks and Judge Caldwell, regarding a new arraignment policy created by Radosevich. I also granted Wilbanks leave to amend with regard to any retaliation causally related to the exercise of his speech in these two instances.

Wilbanks's First Amendment allegations are now found primarily at Paragraphs 13-17 and 19$^2$. *See* SAC at ¶ 80. Wilbanks states that the treatment he received as a consequence of the exercise of his First Amendment rights are outlined at Paragraphs 70-74 of the SAC.$^3$ *Id*. This alleged adverse treatment that is not expressly related to the FTO incident or investigation, and which could be related to the exercise of free speech, includes being given a five day suspension

---

$^2$ Wilbanks asserts speech contained in Paragraphs 8-10 are also protected speech.

$^3$ Wilbanks's claims of violation of free speech, contained in Paragraphs 8-10, 13 and 17 of the original complaint, were dismissed by my January 27, 1999 order. These claims included a 1993 incident when Smoker told Radosevich that his inappropriate management style caused morale problems. They also encompassed a November 1993 incident and a September 21, 1993 incident when Wilbanks told Radosevich that he thought Radosevich and Garofano were viewed as vindictive, petty and non-supportive by officers in the District and that this was a cause of morale problems in the District. Also dismissed was the claim involving an incident when Wilbanks would not change findings he made following an auto accident involving a Raton police officer. Wilbank's alleged refusal to cancel a citation issued to a former New Mexico State Police major was also dismissed as it related to Plaintiff's First Amendment claims.

3

and letters of reprimand, being placed on extended probation and being denied the opportunity to take training classes in 1995.

A section of the SAC is different from the original complaint and is titled "Liability of Each Defendant":

> 81. Defendant Taylor knowingly approved, ratified, shared or acquiesced in the acts of Defendants Radosevich and Garofano and shared or adopted their unconstitutional motives in regard to both the equal protection and First Amendment claims. Defendant Taylor personally subjected Plaintiffs to the repeated acts of disparate treatment alleged in paragraphs 70-78, above, had numerous written and oral communications with Radosevich and Garofano abut [sic] what should be done to Plaintiffs, ignored written and oral statements from Sgt. Brown pointing out that Plaintiffs were being subjected to disparate treatment, and in regard to the FTO incident, subjected Plaintiffs to investigations and discipline for engaging in conduct which was the same or similar to that which Taylor himself ordered Plaintiff Wilbanks to engage in earlier that year. Additionally, Taylor failed to follow required procedures when he extended Plaintiff Willbanks's probation.
>
> 82. Even though Defendants Radosevich and Garofano did not make the ultimate decision regarding the above-described adverse actions taken by Defendant Taylor, these Defendants instigated each of the adverse actions, Defendant Taylor relied on the recommendations of the Defendants in making each decision complained of, and the improperly motivated acts and omissions of Radosevich and Garofano caused each of the adverse actions complained of.
>
> 83. The acts and omissions of all three Defendants were committed wilfully, intentionally, and/or with reckless or deliberate indifference to and in violation of Plaintiffs' clearly established First and Fourteenth Amendment rights.

Defendants argue that the majority of the allegations of retaliatory acts set forth in Paragraphs 70-74 of the the SAC were not directed at Wilbanks alone in a free speech context, but against all three Plaintiffs and are made under the heading "Equal Protection Claims." (Def's.

Memo. in Support at 18).[4]  Consequently, they argue that Wilbanks's assertion of free speech could not have resulted in this allegedly adverse treatment.  Defendants argue further that allegations in Paragraph 74 are insufficiently detailed to provide any basis for an inference that this adverse treatment was motivated by retaliation for Wilbanks's exercise of free speech.  Defendants also argue that Paragraph 79 of the SAC negates a connection between First Amendment rights and alleged retaliation; none of the conduct is mentioned as being related to a First Amendment violation.

Defendants' arguments fail to take into account the statement in Paragraph 80 of the SAC that the treatment of Wilbanks described in Paragraphs 70-74 "was substantially motivated by a desire on the part of Defendants Radosevich and Garofano to punish [Wilbanks] because he engaged in speech protected by the First Amendment . . . ."  Further, in Paragraph 81, the SAC states that Taylor shared or adopted Radosevich and Garofano's unconstitutional motives in regard to both the equal protection and First Amendment claims.  Consequently, I conclude that although poorly drafted, overly voluminous, and extremely confusing, Paragraphs 70-74, read in conjunction with these other paragraphs, are sufficient to connect the protected speech activity of Wilbanks to the alleged retaliation.  As noted above at page 4, I construe this alleged retaliation for free speech to be limited to adverse treatment not expressly linked to the FTO matter.

Defendants also make a temporal proximity argument that Wilbanks's report about Garofano's driving and his meeting with Judge Caldwell do not fit within a time frame that would support an inference of retaliation.  Wilbanks's report about Garofano's driving was written "on

---

[4] Paragraphs 73 and 74 are alleged solely on behalf of Wilbanks and involve treatment in the form of his being placed on extended probation and his serving a five day suspension.

or about January 24, 1995" (*See* ¶ 19 of SAC) and his conversation with Judge Caldwell occurred sometime in September 1994 (See ¶ 14 of SAC). I am unable to discern when all of the allegedly adverse employment actions occurred. Consequently, I am unable to determine whether or not the time period between the protected speech and the adverse action would support an inference of retaliation. *See, Marx v. Schnuck Markets*, 76 F.3d 324 (10th Cir. 1996)(unless the adverse employment action is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation).

### A. Potential Liability of Defendant Taylor in His Individual Capacity

In their motion, for purposes of the motion only, Defendants assume that the two sets of speech in question are deserving of constitutional protection and that the factual material alleged in ¶¶ 70-74 are true. Defendants acknowledge on the first page of their brief that Police Chief Taylor was undisputedly the decision-maker who took the employment actions against Plaintiffs, but make a causation argument as mentioned above, i.e., that Taylor was unaware of these particular statements by Wilbanks and that he had no unconstitutional animus toward Wilbanks.

The Supreme Court has made it clear that liability under § 1983 must be predicated upon a "deliberate" deprivation of constitutional rights by the defendant. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). A plaintiff must establish that the defendant caused or contributed to the alleged violation. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Like other § 1983 defendants, supervisory officials may not be held liable on the basis of respondeat superior, but only for their own wrongful behavior.

Although the circuit courts agree that some type of fault must be attributable to a

6

supervisor before supervisory liability may attach, they differ in their formulations of the requisite degree of fault. 1B MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION CLAIMS AND DEFENSES at 122 (3RD ED. 1997). The Tenth Circuit uses a deliberate indifference standard. Plaintiff needs to show what the supervisor actually knew, not what he or she should have known. *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992). Furthermore, supervisory liability must be predicated upon deliberate indifference, not mere negligence. *Langley v. Adams County, Colo.*, 987 F.2d 1473 (10th Cir. 1993). Supervisory liability requires "allegations of personal direction or of knowledge and acquiescence" to state a claim for relief. *Woodward v. City of Worland* at 1400. Of course, actual knowledge by the supervisor may be proven circumstantially, but it is actual knowledge that must be alleged and proved. At this stage of the proceedings, I must determine whether Plaintiff could be entitled to relief under § 1983 for the allegations as stated in the SAC.

Wilbanks must ultimately prove that retaliation for the exercise of his First Amendment rights was the "cause" of the adverse employment actions mentioned above or that it was a substantial or motivating factor in these actions. The ultimate inquiry is whether, as a practical matter, there is a realistic or reasonable likelihood that the employment actions would not have occurred but for the hostility or punitive animus toward Wilbanks because he exercised specific constitutional rights. *See Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). Paragraph 81 has been amended from the original Complaint and alleges that Taylor knowingly approved, ratified, shared or acquiesced in the acts of Radosevich and Garofano, and shared or adopted their unconstitutional motives in regard to both the equal protection and First Amendment claims. Read together, Paragraphs 80 and 81 in essence state that Radosevich and Garofano were

motivated by a desire to punish Wilbanks because he engaged in protected speech and that Taylor knowingly approved, ratified, shared or acquiesced in these acts and shared or adopted their unconstitutional motives. These allegations are sufficient to meet the standards set forth above and to state a claim under § 1983 against Taylor in his personal capacity.[5]

Contrary to the arguments of Defendants, it is not appropriate at this juncture to weigh the evidence on the causation issue. It will ultimately be incumbent upon Plaintiffs to affirmatively prove personal involvement by Taylor in the alleged violations; conclusory allegations will not be sufficient to meet this burden. The Court is cognizant that "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Jenkins v. Wood* at 994. Instead, just as with any individual defendant, the plaintiff must establish "a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* at 994-95, *citing Woodward v. City of Worland* at 1399 (10th Cir. 1992)(*further citations omitted*). The *Jenkins* court noted that a plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.

The original Complaint is vague as to Taylor's motivation to violate the Plaintiffs' First

---

[5] The Eleventh Amendment bars federal jurisdiction over a state official acting in his or her official capacity in a suit for money damages. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiffs may sue Defendant Taylor in his official capacity for prospective injunctive relief only. A state official sued in his or her official capacity for prospective injunctive relief is a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989)(*quoting Kentucky v. Graham* at 167 n.14 (1985)).

The Eleventh Amendment does not bar § 1983 claims against state officers in their individual capacities if such suits proceed on the theory that when the officers act unconstitutionally, they are stripped of their official or representative character and are thus subjected to the consequences of their conduct. *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (*quoting Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991). However, as stated above, to prevail on an individual capacity claim, the plaintiff must show that the defendant personally participated in the alleged violation. *Jenkins v. Wood* at 994 (10th Cir. 1996).

Amendment rights.  (*See* Complaint, ¶ 55).  It states that Taylor approved, ratified or knowingly acquiesced in the acts and omissions of Radosevich and Garafano and then weakens the motivation requirement by stating that "[t]o the extent Defendant did not share Defendant Radosevich's improper motives", he is liable because he approved, ratified and/or acquiesced in Radosevich's actions without fulfilling his duty to properly supervise him.

In contrast, the SAC alleges in ¶ 81 that Taylor knowingly approved, ratified, shared or acquiesced in Radosevich and Garofano's acts *and* shared or adopted their unconstitutional motives in regard to the equal protection and First Amendment claims.  This same paragraph, admittedly in a confusing fashion, goes on to reference Paragraphs 70-78 of the SAC, which are characterized as repeated acts of disparate treatment to which Taylor personally subjected Plaintiffs.  Paragraph 83 alleges that the acts and omission of all three Defendants were committed wilfully, intentionally, and/or with reckless or deliberate indifference to and in violation of Plaintiffs' clearly established First and Fourteenth Amendment rights.

I conclude that these allegations of the SAC are sufficient to survive a motion to dismiss for failure to state a claim for violation of Wilbanks's First Amendment rights by Defendant Taylor in his individual capacity.  Given this conclusion, Defendant Taylor's argument that he is entitled to qualified immunity, because he is not alleged to have known of any protected speech by Wilbanks and had no independent retaliatory motive, is inapposite.

### B.  Potential Liability of Defendants Radosevich and Garofano in Their Individual Capacities

These two defendants have been sued in their individual capacities only.  As stated above,

9

for purposes of this motion, Defendants have acknowledged that Taylor was undisputedly the decision-maker who took the allegedly adverse employment actions against Wilbanks. An individual may be liable under § 1983 if that individual while acting under color of state law causes the deprivation of a federal right. To find a cause of action here against Radosevich and Garofano, there must be allegations to support a causal connection between their actions and the allegedly adverse employment actions. For example, if they recommended the adverse employment action to Taylor, based on constitutionally impermissible reasons, they could be personally liable. *See Wulf v. City of Wichita*, 883 F.2d 842, 864 (10th Cir. 1989). *See also Connor v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988), (*quoted in Wulf* at 864)("The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.")

I conclude that the SAC contains sufficient allegations of actions by Radosevich and Garofano to set in motion the series of events that Wilbanks contends violated his constitutional rights. Paragraph 82 states, for example, that although Radosevich and Garofano did not make the ultimate decision regarding adverse actions taken by Taylor, that they instigated each of the adverse actions, that Taylor relied on their recommendations in this regard, and that their improperly motivated acts and omissions caused each of the alleged adverse actions.

### III. Equal Protection Claims of All Three Plaintiffs

Defendants previously filed a motion to dismiss and I ruled orally at the January 11, 1999

hearing that I would deny the motion to dismiss the equal protection claim.[6] At that time, I stated that I thought it possible that Plaintiffs could prove some denial of equal protection under the *Esmail/Smith* theory of equal protection, which they are now limited to attempting to allege. *See Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995)("If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court.") The *Esmail* Court noted that this principle was implied by the Supreme Court in *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446-47 (1985), when it pointed out that some objectives of state action simply are illegitimate and will not support actions challenged as denials of equal protection. *Id*. at 179-180. Under this category of equal protection, individuals are protected from intentional or purposeful discrimination even if they are not identified with a particular group or class.

It is noteworthy that the *Esmail* type of equal protection was upheld last month in *Village of Willowbrook v. Olech*, No. 98-1288, 2000 WL 201157 (U.S.Feb. 23, 2000)(per curiam). That case determined that the Equal Protection Clause gives rise to a cause of action on behalf of a "class of one" where the plaintiff did not allege membership in a class or group. The Supreme Court affirmed the Seventh Circuit's holding that a plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a " 'spiteful effort to "get him" for reasons wholly unrelated to any legitimate state objective.' "160 F.3d 386, 387 (7th Cir. 1998)(*quoting Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). This recent decision further

---

[6] This was confirmed in writing in ¶ 3A of my subsequent order: "Plaintiffs are granted leave to amend their claims to equal protection so that the claims will be more easily understood as to the group or groups of individuals that Plaintiffs allege their treatment was dissimilar from".

holds that "[w]hether the complaint alleges a class of one or of five is of no consequence because . . . the number of individuals in a class is immaterial for equal protection analysis." *Id.* at n.1.

As I stated at the January 1999 hearing, I interpreted the equal protection claim in the original complaint as probably applying only to Wilbanks. I then gave the other Plaintiffs an opportunity to restate equal protection claims. For the reasons that follow, I am persuaded that the SAC adequately and properly states equal protection claims for all Plaintiffs.

In the current motion to dismiss, Defendants attempt, to some extent, to challenge the ruling I have already made on this issue. To the extent they have done so, I will not address their arguments. In addition, Defendants have made some arguments that are applicable now that new allegations as to all three Plaintiffs have been made.

I find no support for Defendants' position that to pursue this category of malignant animosity action, there must be allegations of a "class of one". I realize that *Esmail* literally discusses a plaintiff being "singled out" by a powerful government official. I am not convinced that this term mandates that if more than one plaintiff is picked on by the same defendants for the same reasons, that multiple plaintiffs are foreclosed from a cause of action for this type of equal protection claim. Defendants cite no support for this extremely narrow interpretation of *Esmail*, nor does the language of that opinion itself support such a conclusion.

Defendants argue further that no facts are alleged to support that these three Plaintiffs were similarly situated to any group from which they were treated differently. To the contrary, I find that this is adequately alleged in ¶¶ 70-78.

Further, contrary to Defendants' arguments, I have reviewed Para. 79 of the SAC and find that it sufficiently states an improper discriminatory animus. The relevant allegations are that

12

"each Defendant was motivated by each Defendant's personal hostility, jealousy and dislike toward each Plaintiff. . . . Defendants' conduct was spiteful, vindictive, malicious, irrational, arbitrary and capricious, was wholly unrelated to any legitimate governmental objective and constituted a violation of each Plaintiff's Fourteen Amendment right to the equal protection of the law."

Finally, contrary to Defendants' arguments I conclude that ¶ ¶ 70-78 and 34 of the SAC make sufficient allegations of unequal treatment.

### A. Qualified Immunity

Defendants raise the qualified immunity defense. "Once a defendant asserts qualified immunity, the plaintiff bears the burden of proving that the defendants violated a law that was clearly established." *Lenz v. Dewey*, 64 F.3d 547, 550 (10th Cir. 1995). "'The plaintiff must make a particularized showing, demonstrating that the contours of the violated right were so established that 'a reasonable official would understand that what he [wa]s doing violate[d] that right,'" *id.(quoting Anderson v. Creighton,* 483 U.S. 635, 640 (1987), "or that the official did not act in good faith." *Id*. (*citing Harlow v. Fitzgerald*, 457 U.S.800, 815 (1982).

Defendants state that their actions "that Plaintiffs complain of were concluded by the end of 1996 or shortly thereafter. . . ." (Def. Memo. in Supp. of Mot. to Dismiss SAC, pp. 11-12). Accordingly, it is incumbent upon the Court to determine whether or not Plaintiffs have made a particularized showing to demonstrate a clearly established right at that time for the "malignant animosity" category of equal protection. In order for a law to be clearly established, "' there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of

authority from other circuits must have found the law to be as the plaintiff maintains.'" *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999)(*quoting Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). *Murrell* recently recognized that the concept of clearly established law should not be applied too literally. Thus, "[w]e have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct." *Id.* at 1251. Rather, the Tenth Circuit merely requires the parties to make a reasonable application of existing law to their own circumstances. *Id*.

In *Smith v. Eastern New Mexico*, 72 F.3d 138 (10th Cir. 1995)(unpublished), the Tenth Circuit reversed summary judgment for a public employer after its employee plaintiffs left their positions following a series of alleged wrongful disciplinary actions. The plaintiffs contended that the defendants' conduct was improper, malicious and motivated by personal animosity. *Smith* observed that the defendants' conduct constituted fraud, malice and oppression and that defendants were motivated by a desire to promote their own economic interests. The Court concluded that the Equal Protection Clause protects an individual where there is an element of intentional or purposeful discrimination. As in *Esmail*, no suspect class or fundamental right was present.

The *Smith* opinion was unpublished[7] and filed on December 19, 1995. In reaching its decision, the *Smith* Court conducted an analysis that relied extensively upon *Esmail* reasoning and

---

[7] Generally, unpublished orders and judgments of the Tenth Circuit are not binding precedents, except under the doctrines of law of the case, res judicata and collateral estoppel. Also, citation of unpublished orders and judgments is not favored. 10TH CIR. RULE 36.3 (eff. January 1, 1996). "Nevertheless, an unpublished decision may be cited if it has persuasive value with respect to a material issue that has not been addressed in a published opinion and it would assist in its disposition. . . . . " *Id*.

14

expressly stated that it was important for its analysis. *Smith* noted that *Esmail* cited *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446-47 (1985) in its holding that an individual's complaint states a claim by averring vindictive action against him. The *Smith* case also referenced *Ciechon v. City of Chicago*, 686 F.2d 511, 522-24 & n.16 (7th Cir. 1982), which held that an intentional act of invidious discrimination with no rational basis and motivated by bad faith established an equal protection claim asserted by a single victim, without identification of a class of victims. *Smith* also mentioned *Zeigler v. Jackson*, 638 F.2d 776, 779-80 (5th Cir.1981) which held that distinctions between similarly situated individuals must be reasonable and not arbitrary in order to survive an equal protection challenge. The *Smith* Court summarized by stating that its Sister Circuits have held that the showing of an element of intentional or purposeful discrimination against one victim may establish an equal protection violation although a target group or classification is not identified. The opinion mentioned the expression of "similar views" from courts in the First, Second and Eighth Circuits and from the Supreme Court.

A careful review of this opinion convinces me that the *Smith* Court concluded, as of the date of its opinion, December 1995, that this right was clearly established by the "weight of authority from other circuits." *Murrell v. School Dist. No. 1, Denver, Colo.* at 1251. I cite to the *Smith* opinion because I believe it has persuasive value with respect to this material issue and because it assists me in determining that the law in this area was clearly established by the time frame in question in this lawsuit.

My 1997 opinion in *Garcia v. State of N.M. Office of the Treasurer,* 959 F. Supp 1426, 1432 (D.N.M. 1997) cited cases dated prior to the incidents in this case that recognized this type of "malignant animosity" claim. I will not restate that analysis here.

15

In addition, I agree with Plaintiffs that *Norton v. Village of Corrales*, 103 F.3d 928 (10th Cir. 1996) should be limited to its narrow circumstances and that it is distinguishable from this case. I note that the *Norton* plaintiffs did not specifically label their claim as an equal protection claim, but the Court "read this assertion of bias and right to an impartial tribunal" as such. *Id.* at 933. The *Norton* plaintiffs did not claim to be members of a protected class but made allegations of purposeful discrimination. I interpret the qualified immunity portion of *Norton* to be that plaintiffs did not make the particularized showing necessary to defeat qualified immunity. The Court noted that plaintiffs did not point to any case law establishing that defendants' actions in denying approval of their plats and city registration violated equal protection rights. Rather, plaintiffs cited state law cases.

Plaintiffs have cited many other cases and rationale beyond that of the *Smith* case. The reasons I have set forth above are basically consistent with those presented by Plaintiffs in their brief. I conclude that they have made a sufficiently particularized showing to defeat the application of qualified immunity to this claim. Applying the "clearly established" test set forth in *Murrell v. School Dist. No. 1, Denver, Colo.*, I agree with Plaintiffs and conclude that by the relevant time period, a reasonable application of existing law to these circumstances prevents granting qualified immunity to these Defendants.

**Conclusion**

For the foregoing reasons, I conclude that Plaintiff Wilbanks has sufficiently stated a First Amendment claim and that all three Plaintiffs have sufficiently stated Equal Protection claims. I note that discovery in this matter has been stayed, pending resolution of Defendants' motion to dismiss; this stay is hereby **lifted**, effective immediately.

16

**WHEREFORE, IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss Second Amended Complaint is **denied** and the stay on discovery imposed on this case on April 27, 1999 (Docket No. 38) is hereby **lifted**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**